# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00138-CV

---

### K&L Gates LLP, Appellant

### v.

### Quantum Materials Corp., Appellee

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. 18-2393, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant K&L Gates LLP challenges the district court's denial of a motion to dismiss filed pursuant to the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code § 27.005(b), arguing that the district court erred by failing to dismiss claims brought by Quantum Materials Corporation, a former client of K&L Gates. We will affirm.

## I. BACKGROUND

The dispositive facts at this interlocutory stage are largely uncontested, although the parties disagree as to the import of those facts.

### A. K&L's Representation of Quantum Materials

On March 22, 2016, technology manufacturer Quantum Materials retained the law firm K&L Gates to assist other outside counsel with the provision of certain legal services. The

parties memorialized this agreement with a letter entitled "Confirmation of Engagement" ("Engagement Letter") and an appendix titled "Terms of Engagement for Legal Services" ("Terms of Engagement"). According to the Engagement Letter, K&L Gates agreed "to provide [Quantum Materials] with non[-]adverse corporate law advice and to address those additional matters for which [K&L Gates] expressly agrees to provide representation." The Engagement Letter also included the following caveats:

> K&L Gates will only provide legal services. We have not been retained, and expressly disclaim any obligation, to provide business or investment advice.
>
> . . .
>
> With respect to conflicts of interest that may arise in the future during our engagement by you, the Terms includes a Conflict of Interest section in which you agree to a limited, prospective waiver. This means that, if all the conditions set forth therein are met, including that the matter is not substantially related to the matters we handled or are handling for you, the Firm 1) may represent another client in a matter in which its interests are adverse to your interests, and 2) may represent as a client any individual or entity that is or has been adverse to you.

The President of Quantum Materials signed the Engagement Letter to confirm acceptance of the conditions set forth in the Engagement Letter and in the Terms of Engagement. K&L Gates rendered legal services through the rest of 2016, billing Quantum Materials for more than $300,000 of work. As Quantum Materials describes it, K&L Gates undertook "all of the transactional work for Quantum and participate[d], as corporate counsel, in the board meetings." K&L Gates also assisted in drafting an "S-1" filing required by the Securities Exchange Commission before an initial public offering. *See* 17 C.F.R. § 239.11 (describing and governing S-1 filings).

Early in 2017, Quantum Materials replaced its entire board of directors, which resumed procuring what Quantum Materials refers to as "the lion's share" of its legal services

2

from the counselors it had used before it retained K&L Gates. The new board of directors then authorized the issuance of promissory notes to SBI Investments, LLC, and L2 Capital, LLC, (together, "the Lenders") in exchange for $300,000 in March of 2017. K&L Gates did not represent Quantum Materials or the Lenders in these loan transactions. While K&L Gates never formally or expressly terminated its representation of Quantum Materials, it sent its last invoice on January 31, 2017, for services provided through December 31, 2016.

**B. Underlying Litigation**

In September of 2017, a dispute arose involving Quantum Materials, the Lenders, and Empire Stock Transfer ("Empire"). In the event of default, the loan documents allowed the Lenders to obtain equity in Quantum Materials. Although Quantum Materials denied any default, the Lenders asserted a right to equity in the corporation. Quantum Materials ultimately sued Empire in Hays County district court, seeking to enjoin Empire from transferring any stock to the Lenders. K&L Gates did not represent Quantum Materials at any stage of this litigation; however, K&L Gates filed a petition in intervention on behalf of the Lenders, with the Lenders alleging that Quantum Materials had breached its respective contracts with the Lenders.

In October, Quantum Materials moved to disqualify K&L Gates from representing the Lenders, alleging a conflict of interest arising from the firm's prior representation of Quantum Materials and arguing that K&L Gates had obtained confidential financial information during that representation. In response, K&L Gates attested that the dispute between Quantum Materials and its lenders bore no relationship to the work it had undertaken for Quantum Materials, and therefore that no conflict existed. Notwithstanding its

3

denial of any conflict, K&L Gates voluntarily withdrew its representation of the Lenders after just ten days in the case. Thus, the district court did not rule on the motion to disqualify.

**C. Present Litigation**

In September of 2018, K&L Gates sent a notice requesting that Quantum Materials pay the $300,000 owed for the legal work provided in 2016. Quantum Materials did not make any payment.

Three weeks later, Quantum Materials sued K&L Gates for malpractice, breach of fiduciary duty, and violations of the Deceptive Trade Practices Act, *see generally* Tex. Bus. & Com. Code §§ 17.01–.955 ("DTPA"). K&L Gates responded with a motion to dismiss under Section 27.005 of the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). As grounds for dismissal, K&L Gates argued that Quantum Materials's suit arose from K&L Gates's exercise of the right to petition: specifically, it characterized the suit as "based solely on K&L Gates's alleged statements and filings made on behalf of the Lenders (its clients) in the course of" the litigation between Quantum Materials and the Lenders. K&L Gates further argued that the firm and its attorneys benefit from the doctrine of attorney immunity. *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (explaining "general rule" that attorneys are immune from third-party allegations of negligent representation of clients). Quantum Materials opposed the motion, arguing that the TCPA protection of the right to petition does not contemplate "attorneys who work to the detriment of one client (in favor of more lucrative clients) under the blanket generalization that any such work must have necessarily arisen in the context of (inherently protected) litigation."

4

The parties argued the motion to dismiss to the district court on January 16, 2019. The district court took the motion under advisement and offered the parties one week to brief the court on any additional relevant case law. Both parties provided the court with additional authority, and Quantum Materials filed an affidavit ("Lindberg Affidavit") attesting that K&L Gates had accessed its confidential and substantially related financial information during the period of representation. K&L Gates objected to the affidavit as untimely. The district court ultimately overruled the objections to the affidavit and denied the motion to dismiss without explanation. K&L Gates timely perfected this appeal. *See* Tex. Civ. Prac. & Rem. Code § 27.008 (allowing interlocutory appeal from denial of motion to dismiss).

## II. DISCUSSION

K&L Gates contends the district court erred by denying its motion to dismiss, raising arguments that: (1) the TCPA applies to all Quantum Materials's claims; (2) Quantum Materials cannot make out a prima facie case for the elements of its claims; and (3) Quantum Materials's claims are barred by the doctrine of attorney immunity.[1] K&L Gates further argues that it would have been entitled to a mandatory award of attorneys' fees and costs if the court had correctly disposed of its motion. *See id.* § 27.010(b).[2] Quantum Materials responds that even if

---

[1] K&L Gates also contends the district court abused its discretion in considering the Lindberg Affidavit. Because we will dispose of the remaining issues based on undisputed aspects of the record, we do not reach its arguments regarding the affidavit. *See* Tex. R. App. P. 44.1, 47.1.

[2] The 86th Legislature amended the Texas Citizens Participation Act (TCPA), *see generally* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684, but the prior version of the statute applies to cases filed before September 1, 2019, *see id.* §§ 11–12, 2019 Tex. Gen. Laws at 687. This is such a case, and all citations are to the pre-amendment statute.

5

the statute applies to its claims—a point it disputes—it can make out a prima facie case for each element of those claims. *See id.* § 27.009(a)(1).

The TCPA allows a party to move for dismissal of any "legal action that is based on, related to, or in response to [that] party's exercise of the right of free speech, right to petition, or right of association." *See id.* § 27.003. "[T]he Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (citing Tex. Civ. Prac. & Rem. Code § 27.003). "Under the first step, a movant seeking to prevail on a motion to dismiss under the TCPA has the burden to 'show[ ] by a preponderance of the evidence that the [non-movant's] legal action is based on, relates to, or is in response to the [movant's] exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association.'" *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 872 (Tex. App.—Austin 2018, pet. denied) (quoting Tex. Civ. Prac. & Rem. Code § 27.005(b)). If the court "determines that the movant has met his burden to show that the TCPA applies, the burden shifts to the non[-]movant to establish 'by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Id.* at 872–73 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)). And if the non-movant does so, the burden shifts to the movant to establish any defense. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). In determining whether to dismiss a claim, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a); *see also Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App—Austin 2015, no pet.). We review the disposition of a TCPA motion to dismiss de novo. *Serafine*, 466 S.W.3d at 357.

6

**A. Substance of Quantum Materials's Claims**

Quantum Materials's petition for relief includes claims of legal malpractice, breach of fiduciary duty, and DTPA violations. Our review of the allegations reveals that the malpractice claim is in substance a claim of breach of fiduciary duty.

Parties often confuse malpractice claims with other causes of action. *See, e.g.*, *Latham v. Castillo*, 972 S.W.2d 66, 69 (Tex. 1998) (malpractice and DTPA); *Duerr v. Brown*, 262 S.W.3d 63, 71 (Tex. App.—Houston [14th] 2008, no pet.) (malpractice and breached fiduciary duty); *Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied) (malpractice, breached fiduciary duty, and DTPA violations); *Kimleco Petrol., Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App.—Fort Worth 2002, pet. denied) (malpractice, breach of contract, breached fiduciary duty). As a sister court has explained, "A legal malpractice claim focuses on whether an attorney represented a client with the requisite level of skill, while a breach of fiduciary duty claim encompasses whether an attorney obtained an improper benefit from the representation." *See Duerr*, 262 S.W.3d at 71 (citing *Aiken*, 115 S.W.3d at 28).

As grounds for its malpractice claim, Quantum Materials pleads:

> [T]he grossly negligent and intentional actions of K&L Gates led to Quantum being sued in Texas, Florida and Kansas, and Quantum has incurred significant legal fees and public concerns about this war begun against them by their own law firm. All of the costs due to the Intervention, the original Texas claim and appeal are directly and proximately caused by Gates' dual representation activities and pleadings.

As examples of these "grossly negligent and intentional actions," Quantum Materials alleges that K&L Gates either deliberately "took up arms against their own client" by filing the petition in intervention or that "a clerical error of gross negligence" led to the firm's failure to identify the

7

potential conflict of interest before it began representing the Lenders. As a result, it avers, the corporation suffered hundreds of thousands of dollars in damages.

It is unclear from this record whether an attorney-client relationship existed at the time of the complained-of conduct, as K&L Gates had not provided any service to Quantum Materials in at least nine months. But even assuming an attorney-client relationship still existed, that relationship would not convert this grievance into a claim of malpractice. Quantum Materials does not complain of any advice or service K&L Gates provided to Quantum Materials.[3] It does not, for example, complain of K&L Gates's work in preparing the S-1 for the Securities Exchange Commission. It does not complain of K&L Gates's conduct at the board meetings. In essence, Quantum Materials's alleged grievance—that K&L Gates obtained confidential information and then "took up arms" by using that information to the Lenders' advantage—is an allegation that K&L Gates abused confidence and gained an improper benefit through its representation of Quantum Materials. Such an allegation is properly pursued as a theory of breached fiduciary duty. *See Duerr*, 262 S.W.3d at 71. Because we must analyze the substance of a plaintiff's claims irrespective of the labels used in the pleadings, *see Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 302 (Tex. App.—Austin 2018, pet. denied); *Serafine*, 466 S.W.3d at 383, we construe Quantum Materials's petition as pleading breach of fiduciary duty and DTPA violations.

---

[3] In its briefing and argument to this Court, Quantum Materials complains vaguely of "negotiations" that K&L Gates might have undertaken on its behalf with the very Lenders that ultimately intervened in the underlying suit, but Quantum Materials did not include that allegation in its pleadings or in the limited record we use to conduct the TCPA analysis. *See* Tex. Civ. Prac. & Rem. Code § 27.006. Moreover, the allegation is refuted by the representation agreement and by Quantum Materials's filings with the Security Exchange Commission.

**B. Prima Facie Case**

The parties before the Court disagree as to whether the TCPA applies to Quantum Materials's claims. Because it is dispositive of this appeal, we will consider whether Quantum Materials has raised a prima facie case for its two claims on an assumption that the TCPA applies. *See North Cypress Med. Ctr. Operating Co. v. Norvil*, 580 S.W.3d 280, 285 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("[W]e will assume without deciding that the TCPA applies to [the] declaratory judgment action for purposes of our resolution of this interlocutory appeal."). A prima facie case exists if the evidence is "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). A prima facie case may be rebutted "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). Quantum Materials's petition for relief pleads a claim of breach of fiduciary duty and violations of the Deceptive Trade Practices Act. We will address the claims in turn.

*1. Breach of Fiduciary Duty*

In the context of an attorney-client relationship, "the essence of a claim for breach of fiduciary duty involves the 'integrity and fidelity' of an attorney . . . ." *Kimleco Petrol.*, 91 S.W.3d at 923 (quoting *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). "An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to

his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends." *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.) (citing *Goffney*, 56 S.W.3d at 193).

As the basis of this claim, Quantum Materials alleges K&L Gates breached the fiduciary relationship when it "attended confidential board meetings and reviewed highly confidential corporate secrets that K&L Gates soon thereafter arrogated to Quantum's detriment." More specifically, Quantum Materials claims K&L Gates used insight into Quantum Materials's corporate outlook and then "impelled [the Lenders] to demand stock (over good cash money) at predatory conditions," and did so without disclosing to Quantum Materials any potential conflict of interest. Quantum Materials pleads that this fiduciary breach led to "substantial damages" in litigation costs and lost equity.

K&L Gates contends Quantum Materials cannot establish a prima facie case for its theory of breach because there is no evidence of any confidential information obtained by K&L Gates or any transfer of that information to the Lenders. We find these arguments unavailing. A prima facie case requires only the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *See Lipsky*, 460 S.W.3d at 590 (citing *In re E.I. DuPont*, 136 S.W.3d at 223; *Texas Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.—El Paso 1994, writ denied)). The TCPA allows the nonmoving party to establish a prima facie case with circumstantial evidence. *See Lipsky*, 460 S.W.3d at 589. "Circumstantial evidence is . . . simply indirect evidence that creates an inference to establish a central fact." *Id*. at 589–90.

10

Applying those standards here, Quantum Materials has satisfied its burden. It is undisputed that K&L Gates represented Quantum Materials, at minimum, for the better part of a year. K&L Gates does not deny that it was present at board meetings and concedes that it prepared the corporation's S-1 filing. It is reasonable to infer that over the course of preparing that document, K&L Gates would have become familiar with Quantum Materials's financial outlook. It is undisputed that the Lenders, after initially accepting cash payments toward the loan obligation, later began insisting on equity as reimbursement. And it is equally uncontroverted that at some point K&L Gates began assisting the Lenders to that end, ultimately suing Quantum Materials in an effort to obtain that equity. A rational mind could review these undisputed facts and infer that K&L Gates: (1) failed to identify a conflict of interest, (2) used its representation of Quantum Materials to its own advantage, or (3) divulged confidential information to the Lenders that led them to seek equity in Quantum Materials. These are well-settled examples of breached fiduciary duty. *See Gibson*, 126 S.W.3d at 330. And while K&L Gates argues that there is no evidence of injury, Quantum Materials suffered injury—at the very least—when it incurred the cost of filing the motion to disqualify. Evidence of further injury may be revealed during discovery. *See Deuell v. Texas Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (explaining nonmoving party's burden "to adduce evidence supporting a rational inference as to the existence of damages, not their amount or constituent parts"). Because Quantum Materials satisfied its burden to state a prima facie case for its claim of breached fiduciary duty, the district court did not err in declining to dismiss that claim.

*2. DTPA Violations*

In the context of the practice of law, the DTPA prohibits, inter alia, any "express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion," and any "unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion." *See* Tex. Bus. & Com. Code §§ 17.46(a), .49(c)(1), .49(c)(3). "'Unconscionable action or course of action' means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id*. § 17.45. Quantum Materials argues that K&L Gates's alleged conduct rises to the level of unconscionability:

> K&L Gates' unconscionable course of action inheres [in] its representations, including those as described in this petition, that were false, misleading, and deceptive. To wit, K&L Gates represented to Quantum that it would work in Quantum's best interest. . . . One of the largest law firms in the world, K&L Gates, took advantage of Quantum's relative lack of legal expertise and/or capacity to a grossly unfair degree.

The affirmative statements made in the Terms of Engagement include that K&L Gates would: (1) act in Quantum Materials's best interest; (2) notify Quantum Materials of the end of representation; (3) maintain confidence of any privileged information; (4) decline to engage any adverse clients on substantially related matters during the period of representation; and (5) advise Quantum Materials of certain conflicts following the termination of representation. After filing the petition in intervention on behalf of the Lenders, K&L Gates also stated to the district court that it had never represented Quantum Materials. These representations, when paired with the allegations listed in our discussion of breached fiduciary duty, suffice to make out a prima facie case of unconscionable conduct. *See Latham*, 972 S.W.2d at 69 (affirming, in relevant part, lower court's holding that an attorney's "[f]ailure to perform as promised supports a finding of

unconscionable conduct"). And because these statements and conduct cannot be characterized as "advice, opinion, or judgment," the allegations are not exempt from the DTPA's prohibition on unconscionable conduct. *See* Tex. Bus. & Com. Code § 17.46(a). The district court therefore did not err in denying K&L Gates's motion to dismiss the claim.

## C. K&L Gates's Defense

K&L Gates contends Quantum Materials's claims are barred by the doctrine of attorney immunity. We disagree. The doctrine provides, "[A]n attorney is immune from liability to nonclients for conduct within the scope of his representation of his clients." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (citing *Cantey Hanger*, 467 S.W.3d at 481). Yet here, Quantum Materials alleges breaches of obligations K&L Gates owed to Quantum Materials *as a current or former client of the firm*. And as the Dallas court has explained, the defense does not shield an attorney from liability arising from misconduct toward his or her own client. *See Stover v. ADM Milling Co.*, No. 05-17-00778-CV, 2018 WL 6818561, at *13 (Tex. App.— Dallas Dec. 28, 2018, pet. filed) (citing *Youngkin*, 546 S.W.3d at 682 ("This is not to say that an attorney could not be held liable to his own client for misconduct similar to that alleged by Hines or be reprimanded for ethics violations.")). K&L Gates has identified no authority holding otherwise, and we are aware of none. We therefore conclude K&L Gates has not met its burden to show the defense applicable to Quantum Materials's claims.

## III. CONCLUSION

For the reasons stated herein, we conclude the district court did not err in its disposition of K&L Gates's motion to dismiss. We therefore affirm the order.

13

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   March 20, 2020